## HOLLAND & KERR v. J. H. CRAVEN.

Western Section.    March 18, 1927.

Petition for Certiorari denied by Supreme Court, December 3, 1927.

1. **Appeal and error.  Evidence held sufficient to sustain verdict.**
    In an action to recover for the loss of buildings destroyed by fire where it was alleged that the fire was caused by defendants' negligence in placing plaintiff's petition as to the cause of the fire and the evidence showed that a lighted lamp had been placed under a barrel of paint that was highly inflamable and further showed that after the fire defendant had admitted that this was the cause of the fire and the evidence further showed that the fire was first discovered near the barrel of paint, held sufficient evidence to justify the findings of the jury.

2. **Negligence.  Variance.  The plaintiff in alleging specific elements of negligence is not limited to prove each and every one.**
    In an action to recover for the loss of buildings destroyed by fire where it was alleged that the fire was caused by defendants' negligence in placing a lighted lamp without a chimney, under a barrel of paint and the evidence showed that the lamp did have a chimney, held that this was not a variance such as would defeat recovery, for the gravamen of plaintiff's declaration was that the placing of a lighted lamp in close proximity to the barrel of paint caused the fire and that was proved.

3. **Evidence.  Witness knowing a formula for paint held competent to testify thereto.**
    Where a witness was offered to testify to the contents of certain paint and it was shown that he took no active part in the actual mixing and making of the paint, but that he was in the plant where the paint was mixed and knew the formula that was used for making the paint, held his testimony was competent.

4. **Damages.  If defendant is guilty of negligence, his loss will not reduce his liability to plaintiff.**
    If the defendants were guilty of negligence and their negligence caused the plaintiff a loss it is immaterial in assessing plaintiff's damages what loss the defendants sustained by their act which was the proximate cause of plaintiff's loss.

5. **Evidence.  Before results of experiments are admissible it must be shown that the experiments were conducted under like conditions as the matter in controversy.**
    Where a witness was offered to testify as to certain experiments he had made touching the inflammability of paint and it was shown that the experiments were not made under similar conditions to those existing at the time of the fire in question, held that the evidence was incompetent.

Appeal in Error from Circuit Court of Hardin County; Hon. J. A. England, Judge.

Affirmed.

Shelton & Harbert, of Savannah, for plaintiff in error.

Ross & Ballew, of Savannah, for defendant in error.

OWEN, J.   The plaintiff below, J. H. Craven, sued the defendants below, Holland & Kerr, a partnership composed of J. E. Holland and U. H. Kerr, for damages which he alleged he sustained by the burning of a house belonging to him and which fire was caused by the negligence of the defendants.   The case was tried before Chancellor V. H. Holmes sitting by interchange for Judge N. R. Barham and a jury and resulted in a verdict for defendant. Plaintiff filed a motion for a new trial, that ground of the motion wherein it was averred that the evidence preponderates in favor of plaintiff was sustained, and a new trial granted.   Defendant took a wayside bill of exceptions.   Thereafter, at a succeeding term of said court, the same judge presiding, the case was again tried and resulted in a verdict for $1500 in favor of plaintiff.   Defendants entered a motion for a new trial, which was overruled, prayed and were granted an appeal to the Court of Civil Appeals, perfected the same, and also presented a wayside bill of exceptions of the first trial.   This appeal reached this court at the January term, 1924, and after being argued was not decided and went over until January 1925.   On March 31, 1925, an opinion prepared by Mr. Justice Clark of the Court of Civil Appeals was filed, wherein the judgment of the lower court was reversed on an error in the charge of the court.   There was no petition for certiorari.   There was another trial in the circuit court of Hardin county before the regular judge and a verdict rendered in favor of the plaintiff for $800.   The defendants seasonably filed their motion for a new trial, containing twelve grounds, which motion was overruled and an appeal prayed and perfected, a proper bill of exceptions signed and filed, and in this court the defendants have assigned eleven errors, being the same assignments raised by the motion for a new trial except one ground in the motion being on the ground of a preponderance of the evidence.   These assignments will be placed into five groups.

By the first four assignments it is insisted that there is no material evidence to support the judgment of the lower court.   Under the second group we have the fifth assignment, which is as follows

"The trial judge erred in not granting to defendants a new trial on the ground of the variance between the allegations of declaration and the proof; the declaration alleging that defendants placed the lighted lamp in close proximity to the paint in question,

which paint was highly inflammable and of a dangerous character, all of which was well known to defendants, that the lamp did not have any globe or chimney on it, that the paint in question became ignited from the lamp because of the highly inflammable nature of the paint, and the paint became ignited in passing through the faucet, which set fire to the building and destroyed it; whereas, the proof shows that the paint did not ignite from the lamp as stated, was not highly inflammable, the contents of the paint was not known nor could have been known to the defendants, the lamp did not have a globe on it, and the building did not ignite from the burning paint.

The third group is designated by assignments six and seven, which complain of the court's refusal to grant certain special requests offered at the conclusion of the charge proper, and which the defendant requested the court to charge to the jury. These special requests are as follows:

"6th. If the proof shows that gasco had in it, at one time, a certain amount of gasoline, and at another time a different amount you may, if you find the paint in question was gasco, assume that it had four gallons to the barrel or a less amount."

"7th. If the defendants placed the lighted lamp in close proximity to the paint in question, and if the paint had in it gasoline or other highly inflammable or combustible material, and this fact was not known to the defendant at the time, or by reasonable diligence they should not have known this, they would not have been guilty of negligence, and you should find for the defendants."

The fourth group covers assignments eight and nine, and complain of the action of the court in excluding testimony of the witnesses John L. Wisdom and Vernon Edenton, who gave depositions, both being citizens of Jackson, Tennessee, and whose depositions were read at the former trials.

The first group embraces assignments ten and eleven, and complain of the action of the court excluding certain testimony of the defendant J. E. Holland and in excluding certain testimony offered by defendants' witness A. W. Prince.

The evidence in this case is the same in all material respects as that produced upon the former trial and presented in the bill of exceptions upon the appeal heretofore argued and disposed of in this court. It was conceded by counsel for both parties that the evidence was practically the same upon the first two trials. Counsel for plaintiff has filed as an exhibit to his brief seeking to sustain the judgment of the lower court, the opinion of this court pronounced March 31, 1925, and prepared by Mr. Justice Clark, and the insistence is made now that the evidence being the same in all material respects, the opinion of the Court of Civil Appeals pre-

pared and delivered by Mr. Justice Clark becomes the law of the case.

We are of opinion that the evidence is practically the same in the last trial as it was in the first two trials. A very full opinion was filed at the former hearing, and we quote from said opinion, as follows:

"Plaintiff's declaration is in three counts. He alleged that he was the owner of a certain lot of land in Hardin county on which was situated a frame business house connected with which was a frame warehouse, that said building and warehouse (they will hereafter be referred to as one house) were rented to defendants for the year 1919, to be used by them in conducting a general mercantile business, and that on the 16th day of November, 1919, while said defendants were so occupying and using said building, they 'carelessly, recklessly, and knowingly placed a lighted coal oil lamp underneath and near to the outlet of an open barrel containing a mixture of coal tar and oil which was well known to defendants to be highly inflammable, and from which lighted lamp the said coal tar and oil mixture was ignited and said building totally destroyed."

"The above allegations are taken from the first count of the declaration.

"The negligence alleged in the second count of the declaration is that 'defendants knowingly, negligently, carelessly and recklessly caused the said store and warehouse, the property of plaintiff as aforesaid, to be destroyed by fire; that the defendants had situated in said building a certain barrel filled with a coal tar and oil preparation used for painting, and on the 16th day of November, 1919, said mixture, by reason of the cold weather, having become cold and difficult of extraction from the barrel in which the same was contained, and having a faucet or gate, and in order to cause the same to run more rapidly from the barrel, the defendants carelessly, recklessly, negligently and knowingly placed under said gate or faucet and immediately adjacent thereto a lighted coal oil lamp, having no globe or other contrivance to prevent the blaze igniting said coal tar and oil mixture, and from which said lamp said coal tar and oil mixture was ignited, and the said storehouse and warehouse of the plaintiff were totally destroyed and became an utter loss to him; that said coal tar and oil preparation or mixture was highly inflammable and the inflammable nature of the same was well known to the defendants; that said burning lamp situated near to and at this highly inflammable, running coal tar and oil, after having been placed there by the defendants, was negligently, carelessly and recklessly left wholly unattended by defendants, and from which blaze said substance was ignited, and the said property of plaintiff totally destroyed.'

"The negligence alleged in the third count of the declaration is that, 'in said building, or one of them, the defendants had a barrel of paint, or a mixture of coal tar and oil carried by them in stock. Said mixture was highly inflammable and the ingredients thereof were highly inflammable, and this was well known to the defendants. The manner of withdrawing said substance from the barrel in which it was contained was through a faucet or gate, and on the 16th day of November, 1919, said mixture having become thickened from the cold weather was difficult of withdrawal through said faucet or gate, and in order to cause the same to run more freely the defendants negligently, carelessly, recklessly, and knowingly placed a lighted coal oil lamp with the blaze of the same in close proximity to and near or at the said faucet or gate and said running substance, and negligently, carelessly, and recklessly left said burning lamp unattended, and from the blaze of said lamp said substance became ignited, and by reason of the fire originating from said lamp and coal tar and oil mixture, as aforesaid,' said storehouse was burned, etc., . . . 'and that by reason of the negligence, recklessness and carelessness of defendants' plaintiff was damaged, etc., . . . and that defendants 'know or should have known the natural consequences of placing said lighted lamp, which contained no chimney, globe or other means of preventing the blaze of the lamp from reaching said substance, highly inflammable in its nature, as aforesaid; that said lighted lamp was placed immediately under the faucet or gate through which said substance was running from the barrel and at or very near the substance itself, and that from which substance the defendants well know gases would and did arise and float from the substance and were liable to and did become ignited from said burning lamp; that the defendants negligently, without due caution, and recklessly left said lamp at the place aforesaid, with the substance running from the barrel, as aforesaid, wholly unattended, without any watchmen or any other means to prevent the ignition of said highly inflammable substance.'

"To plaintiff's declaration the defendants filed a plea of not guilty.

"It is admitted that plaintiff was the owner of the house in controversy and that said house was destroyed by fire on the date claimed. It is also admitted that defendant had said house rented and was occuping same as his general mercantile store at the time of the fire, and that Mr. Holland, a member of the defendant firm, on the day of the fire, and about an hour or two hours before its occurrence, put a lighted lamp under the faucet of a barrel containing paint, his purpose in placing the lighted lamp under said faucet being to heat the paint in the faucet or in the portion of the barrel

to which the faucet was affixed so as to cause the paint to flow through the faucet into the receptacle placed under the faucet. Defendant denies that the placing of said lamp under said faucet was the cause of the fire.

"It further appears from the record that the fire occurred about 3 o'clock p. m. on the 16th day of November, 1919, that a negro man named Joe Hays came to the store of defendant about 1 or between 1 and 2 o'clock p. m. on said date for the purpose of getting some paint to finish the painting of a colored school house; that defendant at first refused to attempt to draw the paint but, being prevailed on, Mr. Holland took a can or bucket such as Havoline oil is usually shipped in, opened the faucet of the barrel, placed the bucket under it, and then placed a lighted coal oil lamp under and near said faucet for the purpose of heating the oil and causing it to flow in the bucket.

"The barrel was in that part of defendants' place of business known as the warehouse, it was on a small elevated platform that was about fifteen or eighteen inches from the floor level, the barrel was 'lying down' on its side, one end of the barrel being against or almost against the wall along which the little platform was erected, and the other end extending over the edge of the platform furtherest from the wall. At some place in the barrel was a small hole called an air hole.

\* \* \* \* \* \* \*

"Plaintiff insists that the paint in the barrel was what is known as Gasco. Defendant most earnestly insists that the record does not show that the paint in said barrel was Gasco. We are of opinion that there is in the record material evidence tending to sustain plaintiff's insistence on this point. Mr. J. L. Wisdom is the president of the company that manufactures the paint. Gooch & Edenton, wholesale merchants of Jackson, Tenn., are distributors of the paint. There is evidence in the record that defendant purchased the paint in question from Gooch & Edenton, and it appears without contradiction that Gooch & Edenton at the time sold only Gasco paint. Moreover, there is evidence in the record that one or both of the members of defendant firm, after the fire and before the bringing of the suit, told at least two persons that the paint that was being drawn from the barrel near which the lamp was placed was Gasco.

"A fifty gallon barrel of Gasco paint contains forty-four gallons of coal tar, four gallons of gasoline and two gallons of reboiled linseed oil. It does not appear from the record whether defendants or either of the members of said firm knew the contents of Gasco paint, and it is denied by defendants that the paint in the barrel was inflammable or that, even if it was, the putting of the lamp

under the faucet caused the fire. On this point the record shows that the fire when first seen was near that end of the barrel next to the wall and was on the wall of the building at a point estimated to be about three feet from the faucet of the barrel and that, when first discovered, there was no fire about the faucet of the barrel. But it is well known that all paint, practically all, is inflammable, and there is in the record material evidence that, while the house was burning, plaintiff arrived on the scene and asked Mr. Holland how the fire originated, and he stated, in substance, that he did it, that he set a lighted lamp near a barrel of paint and the fire started from that. As indicating that Mr. Holland knew or believed it was dangerous to put the lamp so near the barrel of paint, he told Joe Hays to watch it.''

It appears that a Mr. Morris watched this lamp for awhile and he had to leave the store. He notified Mr. Holland, and Mr. Holland then requested Joe Hays to watch the lamp. Mr. Holland testified that he wanted the parties to watch the paint so that when two gallons had run into the can they would notify him and he would close the faucet. It appears that a mark had been designated on the can indicating where the paint would reach in the can to get the quantity the purchaser desired.

It appears that while this lamp was lighted and placed under the faucet and the paint flowing slowly from the barrel into the can, that one Mr. Hinkle, cashier of the bank at Saltillo, went into the warehouse where the barrel of paint and the lighted lamp were. Mr. Hinkle was looking at a stove for his bank. Upon passing the lighted lamp and the barrel of paint Mr. Hinkle asked the defendant Mr. Holland if he did not think that was dangerous. Mr. Holland replied that it was but he had someone watching it. After examining the stove Mr. Holland and Mr. Hinkle again came in close proximity to the lighted lamp under the faucet and Mr Hinkle again remarked to Holland about the danger and Mr. Holland thought the danger would be averted if someone watched.

It appears that the negro Joe Hays who was left to watch the flow of the paint did not testify on the first trial, but testified on the second and third trials. Hays testified that he smoked a pipe while he was in the warehouse watching the flow of the paint and while watching the lamp; that he struck several matches to light his pipe; that he threw these matches on the floor and that before he left the warehouse he laid his pipe on a barrel near the barrel from which the paint was flowing; that probably there was some fire in his pipe. On cross-examination he was asked if he burned the house and he replied that he did not. He testified that he did not say anything about his pipe or the matches until after the first trial. He further testified that he thought the lamp had a

globe to it. The jury evidently did not give much weight or credit to Joe Hay's testimony, and, we think, properly so.

The record shows that gasoline, if drawn slowly from a container, will evaporate or vaporize, and that small clouds of vapor will float off in the air, and, if it comes in contact with a blaze, will become ignited. If there is a large quantity of the vapor when it becomes ignited there may be an explosion, and this would, of course, happen if the vapor is confined; but if the vapor is in small quantities and is unconfined no report results.

We think the court is warranted in finding that there is in the record material evidence upon which the jury could have based and did base a finding that the fire was caused by the placing of a lamp under the open faucet and thereby causing the Gasco paint to flow into the bucket. It was a metal faucet, eight or ten inches long, and had a globe valve on the end.

It results that the first four assignments of error are overruled, said assignments being group No. 1.

As to the fifth assignment, counsel insist that there is a variance, and relies upon the case of East Tenn. Coal Co. v. Daniel, 100 Tenn., 64, and other cases, in which our Supreme Court has held that under a declaration averring specific acts of negligence as grounds for recovery, the plaintiff cannot recover upon proof of other acts of negligence. But that doctrine is not applicable to the instant case, as we understand this record. It is immaterial whether the lamp had a globe or did not. The plaintiff in alleging special elements of negligence is not limited to prove each and every one. The gravamen of plaintiff's declaration was, that the placing of the lighted lamp in close proximity to the barrel of paint caused the fire and that was clearly explained to the jury by the trial judge in his charge. The jury, by a preponderance of plaintiff's proof, found that the fire caught from the lamp. The fifth assignment of error is overruled.

As to the fourth group, which complains of the testimony submitted by the witnesses, J. L. Wisdom and Vernon Edenton, the testimony of these two witnesses was attacked by assignments of error in the former hearing, and the Court of Civil Appeals held that the evidence of both Wisdom and Edenton was competent. Mr. Edenton testified that his firm was the sole distributee of Gasco paint; that he sold no other paint; that he sold the defendants a barrel of Gasco paint, and shipped it to Saltillo a few months before the fire. Mr. Wisdom testified that he was president of the Jackson Gas Company, which manufactured Gasco paint. He testified that he took no active part in the actual mixing and making of the paint, but that he was at the plant where the paint was mixed every day of the year, including Sunday; that he knew the

formula for making paint; that to each barrel of fifty gallons there was forty-four gallons of coal tar, four gallons of gasoline and two gallons of reboiled linseed oil. The witness further testified that Gooch & Edenton of Jackson, Tennessee, were the distributors for the Gasco paint, and that the Gas Company seldom ever sold any paint to a retailer or a consumer.

There is no reversible error in the testimony or evidence of Wisdom & Edenton, and these two assignments of error are overruled and disallowed.

It is next insisted that the court should have excluded the testimony of J. E. Holland, wherein he testified that the defendant sustained a net loss of about $4,000 in the fire. This same question was made upon the former appeal, except the defendants sought to prove the same fact by the other defendant Kerr and this court held that it was not error to exclude the testimony. If the defendants were guilty of negligence and their negligence caused the plaintiff a loss, it is immaterial what loss the defendants sustained by this act of theirs which was the proximate cause of plaintiff's loss. In other words, we do not understand that one who is liable in damages can minimize the damages that he has caused the plaintiff to suffer by pleading and showing that in causing plaintiff a loss through negligence the defendant has likewise suffered a loss, and the tenth assignment of error is overruled.

The eleventh assignment of error complains of the action of the court in excluding certain testimony offered by the witness A. W. Prince, who testified that he had made an experiment with Gasco paint. The defendants sought to prove at the former trial that Mr. Kerr had made an experiment similar to the one that the witness Prince had made, and the Court of Civil Appeals held that the lower court did not err in sustaining an objection to this line of testimony. The experiments made by the witness were under conditions not at all similar to those existing at the time the fire originated, and hence were not admissible, and it results that the assignments in the fifth group are overruled and disallowed.

This brings us to the second group which complain of the court's error in refusing two special requests. We are of opinion that there was no error in refusing these special requests, or either of them, as neither should have been submitted to the jury. We are of opinion that, under the pleadings and the proof the court submitted a fair and impartial charge to the jury and the jury reached a proper verdict in finding in favor of the plaintiff under the proof in this case. The question has been made in brief of counsel for the plaintiff as to the defendant's failure to comply with subsection 3 of Rule 11 of this court in regard to the assignments of error as to exceptions to the testimony of Wisdom & Edenton, and as to

the two special requests, and the assignment upon the exclusion of the evidence offered or sought to be offered by the witness Prince. Counsel for appellants asked leave at the hearing of this cause to be permitted to amend his assignments of error by complying with the rules and the court permitted the amendment, stating the brief and assignments of appellant would be treated as having been properly amended and having complied with the rules of this court with reference to making proper citation from the transcript, and we have considered every assignment upon its merits.

It results that all of the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed. Plaintiff will recover of the defendants the amount of the judgment rendered below, with interest thereon from the date of its rendition, and the plaintiff will recover of the defendants and surety on appeal bond the cost accrued in the lower court, and cost of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.